In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3416

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONALD W. KUBECZKO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 843-1—**Rebecca R. Pallmeyer**, *Judge*.

SUBMITTED AUGUST 31, 2011—DECIDED SEPTEMBER 21, 2011

Before POSNER, ROVNER, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*.    Donald Kubeczko did not
inform the government when his mother died, but
instead cashed the checks that it continued sending to
her address for benefits she had earned under the Civil
Service Retirement System. This went on for twelve
years and netted him $158,000. Eventually he was
caught and pleaded guilty to mail fraud. His Guide-
lines sentencing range was 21 to 27 months, but the

judge sentenced him to 30 months. By the time he was sentenced he had spent 10 months in pretrial detention. He would be entitled to credit for that time against his sentence, 18 U.S.C. § 3585(b)(2), and so if sentenced at the top of the Guidelines range he would have been out in 17 months. The judge sentenced him to 30 months, mainly and perhaps exclusively because she believed that he needed treatment for mental illness and probably alcoholism as well and that it would take more than 18 months. A 30-month sentence, with credit for 10 months, would keep him in prison for 20 months, which she thought would be enough time for treatment. The need for such treatment is not questioned; the defendant has serious mental illness (depression, narcissistic personality, and compulsive personality) and alcohol dependence.

After the judge sentenced the defendant (and indeed while this appeal was pending), the Supreme Court, on the basis of the provision of the Sentencing Reform Act that in determining whether or for how long to imprison a convicted defendant the sentencing judge is to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation," 18 U.S.C. § 3582(a), held that a sentencing judge may not increase the length of the defendant's prison term in order to facilitate the defendant's rehabilitation or correction. *Tapia v. United States*, 131 S. Ct. 2382 (2011). (By "correction" the statute appears to mean "providing the defendant with needed educational or vocational training, medical care, or other correctional treatment."

28 U.S.C. § 994(k); cf. *Tapia v. United States*, *supra*, 131 S. Ct. at 2388.) The government has confessed error.

The judge said at the sentencing hearing that the defendant "has had mental health and perhaps substance abuse issues for which he needs treatment. My concern about the guideline sentence here in this case of 21 to 27 months is that even a high-end guideline sentence may not be long enough for the Bureau of Prisons to designate [the defendant] to a location where he can get mental health treatment . . . . [A] stay in the Bureau of Prisons of a significant length is necessary in order for him to get the Bureau of Prisons' inpatient treatment program. I believe that he has to be in one place longer than 18 months for that purpose . . . . I want to impose a sentence of 30 months in the custody of the Bureau of Prisons, slightly above the guideline range, because I do want to give the Bureau of Prisons every opportunity to place [him] in a facility where he can begin getting the treatment."

Given *Tapia*, this language entitles the defendant to be resentenced. But there is an issue lurking that may become relevant at his new sentencing hearing, an issue not addressed in the *Tapia* opinion. The issue is flagged in some ambiguous further remarks of the judge at the sentencing hearing. She said: "He had been in the Salvation Army [that is, in a Salvation Army halfway house, see *United States v. Hart*, 578 F.3d 674, 675 (7th Cir. 2009)]. He was essentially removed involuntarily from that facility because of his behavior . . . . The reason I couldn't release [him], in spite of the fact that this

[i.e., mail fraud] is a nonviolent crime, is that he had really nobody who could step forward and be a custodian for him."

These remarks intimate (no stronger word is possible) a concern that by virtue of his untreated mental illness and alcoholism, the defendant may be too dangerous to be left to roam at large until these conditions are brought under control. The staff of the Salvation Army facility, in explaining why he had to be removed from the facility and given psychiatric treatment elsewhere, remarked "his grandiose/entitled thinking, possible psychotic thinking concerning the above stated sexual ideations, and possible safety concerns due to other clients' reactions to [his] unwillingness to engage in his own treatment as well as his unwillingness to cope with other races/genders." Nothing in the statute, or in the language or reasoning of *Tapia*, suggests that there is any impropriety to lengthening a sentence because of concern—whether based on mental illness, addiction, or anything else that may weaken a person's inhibitions against committing crimes—that the defendant is likely to commit further crimes upon release, so that a longer sentence is required for the protection of the public.

Compare two hypothetical sentencing statements. In one the judge says, "I'm not worried that you'll commit more crimes if I gave you a shorter sentence; I am giving you a long sentence to enable you to obtain psychiatric assistance that will bring about your complete rehabilitation." In the other sentencing statement

the judge says, "I am going to sentence you to a sentence long enough to enable you to obtain psychiatric assistance, because until then you will continue to be a danger to the public because you can't control your violent impulses." The first ground for a longer sentence violates the statute, but the second does not, because incapacitation (physically preventing the defendant from committing crimes on "the outside," by imprisoning him) is an authorized factor for a judge to consider in determining the length of a prison sentence. 18 U.S.C. § 3553(a)(2)(C). The need for incapacitation might be rooted in mental problems that could be alleviated by treatment. The mental problems themselves, and the possibility that the defendant would benefit from treatment that he could obtain by an extended prison term, would be inadmissible considerations; but the fact that his mental problems made him more dangerous could justify a longer sentence without running afoul of section 3582(a).

The distinction was made clear by the district court and court of appeals in *United States v. Lawrence*, 402 Fed. Appx. 699, 701-02 (3d Cir. 2010) (record references omitted): "The record demonstrates that the district court did not impose Lawrence's term of imprisonment for rehabilitative purposes . . . . The court noted that Lawrence has not shown even 'the beginnings of rehabilitation' because he had not acknowledged his guilt in any way. The district court further admonished that Lawrence would 'have to get it sooner or later in order to get me to give you a more lenient sentence.' The court also made clear that it believed that Lawrence

posed a danger to the community and was not ready for rehabilitation, observing that there was a 'pattern of criminal activity . . . that causes me pause as to how safe the community is with Mr. Lawrence in it, unless he's been truly rehabilitated, which I've already said on the record he's not ready for yet, unfortunately.' Thus, the district court's statements reveal that it sentenced Lawrence to a term of imprisonment not for a rehabilitative purpose, but rather, because he had not demonstrated that he was interested in rehabilitation. Accordingly, the court imposed a custodial sentence in order to protect the community, promote respect for the law, and to provide a just punishment for the offense, all of which are permissible sentencing considerations under § 3553(a)." And *United States v. Dixon*, 449 F.3d 194, 205 (1st Cir. 2006), said that the defendant's "conduct, whether or not evincing a plea for help, showed that were he to be released before being given a meaningful opportunity for rehabilitation, he would pose a real danger both to the intended recipients of the [threatening] letters and to society at large."

But the sentencing judge's remarks in the present case were ambiguous. The reference to the defendant's having no custodian was to the judge's having decided that she had to commit him to jail after he proved himself unmanageable by the Salvation Army. (A jail was not the type of "custodian" that she had in mind.) But she may have believed that until his mental health and substance abuse problems were solved, or, more realistically, ameliorated, he could not restrain himself from committing further crimes, and if so it would

be dangerous to the public to release him in (say) 17 months (the 27-month top of the Guidelines range minus the 10-month credit). It is a possibility that the judge will be authorized to consider in resentencing the defendant.

An alternative approach, which she should also consider, is not extending his sentence but rather deferring the decision whether he can be safely released when he completes it. A prisoner who cannot safely be released upon completion of his sentence may be civilly committed then—and by a federal judge if a state won't commit him. 18 U.S.C. § 4248(d); see *United States v. Comstock*, 130 S. Ct. 1949 (2010). The difficulty of predicting a defendant's mental status when he is released makes this approach advisable in many cases, especially when the sentence is long, which increases the difficulty of prediction. In this case, however, a sentence at the top of the applicable Guidelines range would, after credit for time served, be only 17 months from the date of imposition.

VACATED AND REMANDED.