NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 4, 2013
Submitted May 14, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 12-3270 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | |
| | No. 11 CR 910 |
| *v.* | |
| | **Virginia Kendall**, *Judge*. |
| MELISSA GALLAGHER, *Defendant-Appellant*. | |

**O R D E R**

After Melissa Gallagher violated several conditions of her supervised release, the district court revoked her supervised release and sentenced her to twelve months in prison to be followed by three years of supervised release. Gallagher appeals her sentence contending that the district court violated *Tapia v. United States*, 131 S. Ct. 2382 (2011), by lengthening her prison sentence to allow her to receive drug treatment during her incarceration. We affirm.

## I. Factual Background

Gallagher pleaded guilty to producing false identification cards and was sentenced to fifteen months in prison followed by thirty-six months of supervised release. After completing her prison term, Gallagher repeatedly violated the conditions of her supervised release. She tested positive for an array of illegal drugs on numerous occasions. She also failed to report for a number of her drug testing appointments and for daily methadone medication to assist with her heroin addiction. Finally, she failed to attend various counseling sessions. In a Special Report, her probation officer recommended that Gallagher's supervised release be revoked and that she be sentenced to twenty-four months in prison.

On June 30, 2012, the district court held a revocation hearing. The government sought revocation and noted that Gallagher had displayed aggressive behavior towards her probation officer. However, there was also extensive discussion regarding inpatient drug and mental health treatment as an alternative to imprisonment. Ultimately, the district court continued the revocation hearing so that Gallagher and her attorney could determine whether she wished to contest or admit to the violations. Gallagher cites a remark made by the district court to her that "this is a really serious addiction, and you've got some obligations to people other than yourself." The district court also repeatedly expressed "significant concern" that Gallagher posed a safety risk to her young son.

On August 20, 2012, Gallagher appeared before the district court for the continued revocation hearing. Her probation officer reported that Gallagher had been admitted to the Abraxas Southwood treatment clinic. Initially, she participated in the clinic's medical-detox program, but she was later transferred to the facility's residential drug-treatment program. At one point, Gallagher tested positive for opiates. Her probation officer expressed concerns that Gallagher might be obtaining drugs from her husband, and sought to move Gallagher to the Salvation Army Community Confinement Center. Because Gallagher and the government (albeit grudgingly) agreed to the probation officer's proposal,[1] the district court declined to send Gallagher to prison and instead modified the conditions of her supervised release to require her "to serve 120 days at the Salvation Army Community Confinement Center." Gallagher cites the district court's remark that she should appreciate what her probation officer was doing for her because her probation officer could simply ask the court to send Gallagher to prison where she would not have access to any drugs. The district

---

[1] Gallagher agreed to the modification of her supervised release, but did not formally admit to any of the violations at the August 20 hearing.

court also reiterated its concern about Gallagher's son and informed her that this was her last chance. At the request of Gallagher's probation officer, the district court set a status hearing for September 19, 2012.

At that status hearing, Gallagher's probation officer informed the district court that Gallagher had tested positive for PCP and had left the treatment center against medical advice. Subsequently, she was admitted to a hospital and then transported to the Salvation Army. But she was not permitted to stay because she tested positive for tuberculosis. After she was released, Gallagher failed to show up for an intake appointment and two drug tests. But she did meet with her probation officer and agreed to enter the Salvation Army program. However, she again failed to enter the program on the agreed date because she fell and injured herself. As of the status-hearing date, Gallagher was not in any treatment program.

The government sought revocation of Gallagher's supervised release. Because she now conceded that she had committed the violations alleged in the Petition to Revoke, the Sentencing Guidelines called for a sentencing range of six to twelve months. Both the government and Gallagher's probation officer recommended a sentence of twenty-four months. The government explained that Gallagher needs "both treatment and incarceration, to keep her away from the influences that have been getting at her for an extended period of time." Her probation officer explained that Gallagher would likely only be able to participate in the Bureau of Prisons' Residential Drug Treatment Program if her sentence were at least twenty-four months. In contrast, Gallagher's counsel argued that a sentence in the guideline range, preferably six months, would be sufficient. Her counsel contended that such a sentence would allow her to remain clean, and that the Bureau of Prisons has drug treatment programs for offenders serving sentences shorter than twenty-four months.

Before announcing the sentence, the district court observed that "[u]nder the 3553 factors, I find that the history and characteristics of [Gallagher] are the most significant ones to look at here." Then, as Gallagher notes, the district court stated that Gallagher has "a very, very serious drug addiction." Next, the district court recounted Gallagher's many parole violations, and then said:

> As far as the history and characteristics of the defendant, I'll take into account the most recent information for just information that's relevant to the revocation. You're spiraling out of control. And you have a 5-year-old child at home. . . . [W]hen we talked about the risk to the community, we have two drug-addicted parents with a 5-year-old child. And a mom who has had to be

involuntarily committed for mental health reasons. We have to get this situation under control for that child. And we have to get your life out of — under control. You are not admitting the problem, so you need to admit it.

The district court then sentenced Gallagher to twelve months in prison to be followed by three years of supervised release. Gallagher draws our attention to the district court's subsequent remark:

And the whole time, I'm going to order treatment. I hope you will get it when you're in prison. But if anything, it will keep you away from the drugs and from your husband, who seems to be a drug influence on you for the past year, according to what I've been hearing. This is a serious problem, and you need to get it under control to be a mom to that child.[2]

After the district court announced Gallagher's sentence and explained its rationale for imposing the sentence, Gallagher's counsel requested that the court recommend that the Bureau of Prisons place Gallagher in a facility with a drug treatment program. Gallagher points out that the district court stated, in response, "I'm going to recommend the drug program to be the highest priority because that is what this woman needs."

## II. Discussion

On appeal, Gallagher contends that her sentence violates the rule announced in *Tapia v. United States*, 131 S. Ct. 2382 (2011). *Tapia* holds that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation."[3] 131 S. Ct. at 2393. Although *Tapia* did not involve the revocation of an offender's supervised release, the government concedes that the rule announced in *Tapia* extends to resentencings based on violations of supervised release.[4] Therefore, we assume

---

[2] As the district court clarified shortly after making this statement, the treatment order applied to both the prison sentence and the supervised release.

[3] At oral argument, counsel for the government conceded that the government's request for a twenty-four-month sentence was improper and invited a *Tapia* sentencing error.

[4] The government cites decisions from other circuits holding that *Tapia* applies to prison sentences imposed for violations of supervised release. *See United States v. Deen*, 706 F.3d 760, 765–67 (6th Cir. 2013); *United States v. Garza*, 706 F.3d 655, 657–59 (5th Cir. 2013); *United States v. Mendiola*, 696 F.3d 1033, 1037–42 (10th Cir. 2012); *United States v. Taylor*, 679 F.3d 1005, 1006 (8th Cir. 2012);

without deciding that *Tapia* applies in the revocation context. The parties also agree that our review is for plain error because Gallagher did not assert a *Tapia* objection at her resentencing.[5] Therefore, we also assume without deciding that our review is for plain error. "For there to be plain error, there must be error, the error must be clear or obvious, and the error must affect the defendant's substantial rights." *United States v. Winters*, 695 F.3d 686, 689 (7th Cir. 2012).

Because any finding of plain error must be predicated on a finding of error, we must determine whether the district court imposed or lengthened Gallagher's sentence to enable her to participate in a treatment program. In support of her position that her sentence violates *Tapia*, Gallagher first points to two statements about her addiction and treatment opportunities made by the district court at the June 30 and August 20 hearings, at which she did not receive a prison sentence. Second, she contends that her sentence must be based on an impermissible reason because (according to Gallagher) the district court did not address any legitimate sentencing factors from 18 U.S.C. § 3553(a) when sentencing her to prison. Third, she identifies three statements, made by the district court at her September 19 sentencing hearing, which she contends demonstrate that her sentence was lengthened to enable her to receive treatment while in prison.

## A.    The District Court's Statements at the June 30 and August 20 Hearings

As noted, Gallagher identifies two statements, made by the district court at the June 30 and August 20 hearings, which she believes tend to establish a *Tapia* error. First, at the June 30 hearing, the district court admonished Gallagher that "this is a really serious addiction, and you've got some obligations to people other than yourself." Second, at the August 20 hearing, the district court told Gallagher to appreciate her probation officer's efforts on her behalf because the court could just send her to prison "to make sure" that she would not have access to drugs.

---

*United States v. Grant*, 664 F.3d 276, 282 (9th Cir. 2011); *United States v. Molignaro*, 649 F.3d 1, 5 (1st Cir. 2011).

[5] Again, the government cites decisions from other circuits holding that review is limited to plain error where an offender fails to preserve a *Tapia* objection. *See Garza*, 706 F.3d at 662; *United States v. Bennett*, 698 F.3d 194, 200 (4th Cir. 2012); *Mendiola*, 696 F.3d at 1036; *United States v. Lopez-Alfaro*, No. 11-3743, 2012 WL 4513298, at *1 (3d Cir. Oct. 3, 2012); *Taylor*, 679 F.3d at 1007; *Grant*, 664 F.3d at 279; *see also Henderson v. United States*, 133 S. Ct. 1121, 1125 (2013) (indicating that Rule 52(b) applies where a *Tapia* objection is not preserved); *Molignaro*, 649 F.3d at 2 (implying that plain error review would apply were the *Tapia* objection not preserved).

Because the district court elected not to imprison Gallagher at the June 30 or August 20 hearings, any statements made at these hearings likely would not reveal the court's reasons for subsequently imposing a prison sentence. But even if the statements Gallagher identifies are treated as indicative of the district court's rationale for ultimately imprisoning her, we still perceive no *Tapia* error. The context of the first statement shows that the district court was concerned that Gallagher's addiction might result in harm to her young child. At all three hearings, the district court repeatedly voiced its concern about the risk Gallagher posed to her son. Incapacitating an offender in order to protect others is certainly a valid basis for imposing a prison sentence. *See* 18 U.S.C. § 3553(a)(2)(C). Similarly, regarding the second statement, incapacitating a criminal in order to keep her from committing further crimes (such as using illegal drugs) is permissible. *See United States v. Kubeczko*, 660 F.3d 260, 262 (7th Cir. 2011) ("Nothing in the statute, or in the language or reasoning of *Tapia*, suggests that there is any impropriety in lengthening a sentence because of concern—whether based on mental illness, addiction, or anything else that may weaken a person's inhibitions against committing crimes—that the defendant is likely to commit further crimes upon release . . . ."). Neither statement demonstrates that Gallagher's prison sentence was imposed in violation of *Tapia*.

Moreover, at the June 30 hearing, the district court focused on the possibility that Gallagher could receive treatment *as an alternative* to a sentence of imprisonment. And at the August 20 hearing, the district court elected not to imprison Gallagher, but decided instead to modify the terms of her supervised released to require her to receive treatment at the Salvation Army Community Confinement Center. Treatment and rehabilitation are legitimate considerations in the context of imposing supervised release or modifying the terms thereof. *See Tapia*, 131 S. Ct. at 2390 ("Thus, the [Sentencing Reform Act of 1984] instructs courts, in deciding whether to impose probation or supervised release, to consider whether an offender could benefit from training and treatment programs."). Therefore, to the extent the district court focused on Gallagher's addiction or need for treatment at the June 30 and August 20 hearings, it did nothing unusual or improper.

**B.      The Section 3553(a) Sentencing Factors**

Gallagher also contends that the district court did not address any legitimate sentencing factors from 18 U.S.C. § 3553(a), and that this failure shows that Gallagher's prison sentence was based solely on her need for drug treatment. But Gallagher's claim that the district court did not consider *any* of the statutory sentencing factors is contradicted by the record. At the September 19 hearing, the district court cited Section 3553, and stated that it thought Gallagher's history and characteristics "are the most significant ones to look at

here."[6] *See* 18 U.S.C. § 3553(a)(1). The district court also stated that Gallagher presented a risk to the community because she was a risk to her young son. *See id.* at § 3553(a)(2)(C). Similarly, the district court remarked that the sentence would keep Gallagher away from drugs and from her husband, who appeared to be a bad drug influence on her. That is, the sentence would prevent her from committing further drug crimes. Finally, the district court stated that Gallagher was "not admitting the problem;" and a prison sentence does not violate *Tapia* where it is imposed because the offender has "not demonstrated that he [is] interested in rehabilitation." *Kubeczko*, 660 F.3d at 262–63 (discussing *United States v. Lawrence*, 402 F. App'x 699, 701 (3d Cir. 2010)); *see also United States v. Perez*, 858 F.2d 1272, 1275 (7th Cir. 1988) ("It is appropriate for the trial court to consider such factors as remorse, a lack thereof, and future potential danger to society."). Gallagher's contention that the district court did not consider any of the statutory sentencing factors is without merit. Therefore, her argument that the alleged failure to consider these factors tends to establish a *Tapia* error is not persuasive. *See United States v. Blackmon*, 662 F.3d 981, 986–88 (8th Cir. 2011) (finding no plain *Tapia* error although the district court did not cite Section 3553(a) and only alluded to the statutory sentencing factors by discussed offender's lengthy criminal history and failure to cease violating the law).

## C.      The District Court's Statements at the September 19 Hearing

Finally, Gallagher identifies three statements, made by the district court at the September 19 hearing, which Gallagher contends demonstrate that her prison sentence runs afoul of *Tapia*. First, Gallagher cites the remark made to her by the district court, shortly before announcing the sentence, "Miss Gallagher, you have a very, very serious drug addiction." When read in context, we do not think this reference to Gallagher's drug addiction shows that the district court calculated her sentence in order to ensure that she receive treatment while in prison. The district court's statement was made as a prelude to listing Gallagher's many and repeated violations of her supervised release. And the district court recounted these violations (which stemmed from her drug addiction) to substantiate its finding that Gallagher was "spiraling out of control." The record demonstrates that the district court was concerned about Gallagher's lack of control because of the risk of harmed she posed to her young child. The context of the district court's reference to Gallagher's drug addiction demonstrates that it was imposing a prison sentence in order to incapacitate

---

[6] The district court did not recite each and every statutory sentencing factor. But such a recitation is generally not required. *See United States v. Reyes-Medina*, 683 F.3d 837, 840 (7th Cir. 2012) ("'The district court need not explicitly discuss all of the factors in § 3553(a) . . . .'" (quoting *United States v. Tyra*, 454 F.3d 686, 687 (7th Cir. 2006))).

Gallagher and, thereby, eliminate this risk. As noted above, this is a valid basis for imposing a prison sentence. *See* 18 U.S.C. § 3553(a)(2)(C).

Second, Gallagher points to the district court's remark, made immediately after the sentence was announced:

> And the whole time, I'm going to order treatment. I hope you will get it when you're in prison. But if anything, it will keep you away from the drugs and from your husband, who seems to be a drug influence on you for the past year, according to what I've been hearing. This is a serious problem, and you need to get it under control to be a mom to that child.

Initially, we observe that the order for drug treatment covered both Gallagher's prison sentence and following term of supervised release. As explained above, there is nothing improper about imposing a term of supervised release based on an offender's need for rehabilitation. And while the district court's statement demonstrates that it sincerely hopes that Gallagher receives treatment while in prison, the statement does not establish that the district court imposed or lengthened Gallagher's prison sentence in order to ensure that she received treatment.[7] Rather, as with the district court's prior remark, the context of this statement shows that the court imposed a prison sentence in order to incapacitate Gallagher both to keep her from committing further drug offenses and to protect her young child. Indeed, even Gallagher's counsel recognized that a prison sentence could afford Gallagher an opportunity to "stay clean."

Third, Gallagher relies upon the district court's statement, made in response to her counsel's request that the court recommend that the Bureau of Prisons place Gallagher in a facility with a drug treatment program: "I'm going to recommend the drug program to be

---

[7] The government argues that Gallagher's sentence could not possibly violate *Tapia* because the district court declined to give a twenty-four-month sentence—which, according to Gallagher's probation officer, is the minimum sentence required for an offender to enter the Bureau of Prisons' Residential Drug Treatment Program. By imposing a twelve-month sentence, the district court clearly rejected the government and probation officer's requests to impose a sentence which would render Gallagher eligible for this drug treatment program. But this does not entirely resolve the *Tapia* issue because Gallagher's counsel represented to the district court that other treatment programs were available for offenders serving shorter sentences. Counsel's statements were not contradicted by either the government or the probation officer. And the district court's expression of hope that Gallagher would receive treatment in prison indicates that it accepted her counsel's claim about the availability of prison treatment programs for offenders serving shorter sentences.

the highest priority because that is what this woman needs." Statements that an offender "needs" drug treatment, made by a sentencing court in the context of imposing a prison sentence, can be problematic. *See Tapia*, 131 S. Ct. at 2392–93 (finding problematic the sentencing court's remarks that "[t]he sentence has to be sufficient . . . to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program"). But *Tapia* does not categorically bar comments at sentencing about an offender's need for treatment. *Id.* at 2392 ("A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs. To the contrary, a court properly may address a person who is about to begin a prison term about these important matters."). Here, the district court's statement that Gallagher needs treatment was not made when the court was announcing or explaining the rationale for her sentence. Rather, the statement was made after the sentence had been announced and in response to Gallagher's counsel's request that the court recommend that the Bureau of Prisons place Gallagher in a facility with a drug treatment program. *Tapia* explicitly sanctions a sentencing court's recommendation to "the [Bureau of Prisons] to place an offender in a prison treatment program." *Id.* at 2390–91, 2392. Therefore, we conclude that the district court's statements at the September 19 hearing do not implicate *Tapia*.

## III. Conclusion

Because the record demonstrates that the district court did not sentence Gallagher to prison so that she could receive drug treatment or other rehabilitation, there is no error and, consequently, there can be no plain error. Therefore, Gallagher's sentence is **AFFIRMED**.